NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000361
02-APR-2019
07:50 AM

NO. CAAP-18-0000361

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


WW, Petitioner-Appellant,
v.
DS, Respondent-Appellee,
and
CHILD SUPPORT ENFORCEMENT AGENCY, STATE OF HAWAIʻI,
Respondent-Appellee

APPEAL FROM THE FAMILY COURT OF THE SECOND CIRCUIT
(FC-P NO. 16-1-0149)

MEMORANDUM OPINION
(By:  Ginoza, Chief Judge, Reifurth and Hiraoka, JJ.)

Petitioner-Appellant WW[1] (**Father**) appeals from the
Stipulated Order (**Stipulated Order**) entered by the Family Court
of the Second Circuit (**Family Court**)[2] on February 15, 2018, and
the Order Denying Motion for Reconsideration to Alter or to Amend
Judgment or Order for Relief from Judgment or Order entered on
April 4, 2018 (**Order Denying Reconsideration**).  For the reasons
explained below, we vacate both orders and remand to the Family
Court for further proceedings consistent with this opinion.

I.

Father initiated the action below on November 17, 2016,
by filing a Petition for Paternity (**Petition**) against Respondent-
Appellee DS (**Mother**) and Respondent-Appellee Child Support
Enforcement Agency, State of Hawaiʻi (**CSEA**).  The Family Court
convened an evidentiary hearing on Father's Petition on

---

[1]     Only the parties' initials are used because this case involves
custody of a minor child.  Hawaii Revised Statutes (**HRS**) § 571-54 (2018).

[2]     The Honorable Douglas J. Sameshima presided.

October 25, 2017.  Father and Mother attended the hearing and were represented by their respective attorneys.[3]  After a lunch recess, counsel informed the Family Court that a settlement had been reached.  Counsel placed the terms of the settlement on the record.  After the terms were recited, the Family Court stated:

> THE COURT:  I think we're done here.  Put it in writing and we will -- I'll sign it.

The Family Court did not ask Father or Mother on the record whether they understood and agreed with the settlement terms that had been placed on the record, if they had any questions about what had just taken place, or if anyone was forcing, pressuring, or threatening either of them into settling.  However, Father and Mother were both represented by counsel.  In a case involving a disputed settlement, the Hawai'i Supreme Court stated:

> Courts presume that attorneys abide by their professional responsibilities; outside of disciplinary proceedings, we do not interfere with the attorney-client relationship and conduct relating thereto.  Rule 1.4 of the Hawai'i Rules of Professional Conduct (HRPC)(1993) provides:
>
> > (a)    A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.  A lawyer who receives a written offer of settlement in a civil controversy ... shall promptly inform the client of its substance unless prior discussions with the client have left it clear that the proposal will be unacceptable.
> >
> > (b)    A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.
>
> (Emphases added.) Clearly, it was the duty of Counsel No. 1, and not the court, to keep [the clients] reasonably informed about the terms and conditions of settlement;  we presume in our review that he did so.  Regardless, it appears that [the clients] were informed of and understood the terms of settlement before going on the record.  Judge No. 2 discussed settlement with each of them, in chambers, prior to calling the case.  Additionally, at no point did Counsel No. 1 indicate that he needed more time to explain the terms of settlement to the [clients]; nor did [the clients] indicate to the court that they would like more time to consider the settlement.

---

[3]    CSEA did not participate in the hearing.

Assocs. Fin. Servs. Co. of Hawai'i v. Mijo, 87 Hawai'i 19, 31, 950 P.2d 1219, 1231 (1998) (**Mijo**).

In this case, by letter dated January 23, 2018, Mother's counsel submitted a proposed stipulated order to the Family Court, with a copy to Father's counsel. On January 24, 2018, Father's counsel filed a response to Mother's counsel's letter, objecting to Mother's proposed stipulated order. Father's counsel also submitted an ex parte motion for an interim parenting order, which the Family Court denied on January 29, 2018. On February 15, 2018, the Family Court signed and filed the Stipulated Order as proposed by Mother's counsel; it was signed by Mother and her counsel but not by Father or by Father's counsel.[4]

On February 26, 2018, Father's counsel filed a motion for reconsideration to alter or amend the Stipulated Order. Mother's counsel filed a response and an errata. The Family Court's Order Denying Reconsideration was entered on April 4, 2018. Father, as a self-represented litigant, filed a notice of appeal on April 26, 2018.

On May 4, 2018, the Family Court ordered the parties to prepare proposed findings of fact and conclusions of law pursuant to Hawai'i Family Court Rules (**HFCR**) Rule 52(a) (2015). The Family Court entered its Findings of Fact and Conclusions of Law Regarding Stipulated Order (**FOF&COL**) on June 18, 2018.

Father filed his opening brief, as a self-represented litigant, on July 28, 2018. Mother did not file an answering brief or obtain an extension before the deadline on September 6, 2018. On November 15, 2018, Mother's counsel filed an improper Notice of Withdrawal of Counsel. Because the notice stated that Mother had elected to represent herself, provided Mother's mailing and email addresses, and was signed by Mother, this court treated the notice as a motion for withdrawal or discharge of appellate counsel pursuant to Hawai'i Rules of Appellate

---

[4] The record also contains an "Order Regarding Child Custody and Parenting; Exhibit 'A'" that appears to have been prepared by Father's counsel and that was filed, stamped (apparently by the court) as "unsigned" and without any Exhibit "A," on February 15, 2018. The record does not indicate when or how the document was transmitted to the Family Court.

Procedure (**HRAP**) Rule 50 (2016). The motion was granted and Mother was given additional time to file an answering brief. On February 4, 2019, Mother filed a notice that she did not intend to file an answering brief.

"[W]hen an appellee fails to respond, an appellant is required only to make a prima facie showing of error in order to obtain the relief sought." Omerod v. Heirs of Kaheananui, 116 Hawai'i 239, 269, 172 P.3d 983, 1013 (2007).

## II.

Father contends that the Family Court erroneously denied his motion for reconsideration because the Stipulated Order failed to accurately reflect the settlement terms purportedly placed on the record during the evidentiary hearing on October 25, 2017. Father specifically challenges the Family Court's findings of fact (**FOF**) nos. 13, 15, 16, 17, 18, 19, 20, 22, 24, and 26, and conclusions of law (**COL**) nos. 1, 2, 3, 4, and 5.

A trial court's label of a finding of fact or a conclusion of law is not determinative of the standard of review. Crosby v. State Dep't of Budget & Fin., 76 Hawai'i 332, 340, 876 P.2d 1300, 1308 (1994). Whether the parties entered into an agreement is essentially a question of fact. Mijo, 87 Hawai'i at 28, 950 P.2d at 1228 (citation omitted). We review the family court's findings of fact under the "clearly erroneous" standard. "A finding of fact is clearly erroneous when, despite the evidence to support the finding, the appellate court is left with a definite and firm conviction, in reviewing the entire record, that a mistake has been committed." Id. (citation omitted).

"A trial court's determination regarding the enforce-ability of a settlement agreement is a conclusion of law review[ed] de novo." Id. (emphasis in original) (citation omitted). The family court's conclusions of law are "not binding upon an appellate court and are freely reviewable for their correctness." Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (citation omitted).

## III.

Father's challenge to FOF nos. 15, 16, 17, 18, and 19 raises a threshold issue. The Family Court found:

15. There was agreement to use Mother's Exhibit AAA (Proposed Order) . . . as the template for the settlement negotiations between the parties and their counsel. . . .

16. The parties used Mother's Proposed Order as the template for the final order and negotiated modifications and additions to the Proposed Order. The parties agreed that those portions of the Proposed Order not specifically modified or addressed would remain in the final order. Both parties had copies of the Proposed Order during the settlement negotiations that lasted several hours.

17. . . . Other provisions of the Proposed Order not specifically addressed or read into the record were not challenged by either party nor was there a request to delete or modify those sections of the Proposed Order that was being used as the template for the final Order. There was, therefore, agreement to all provisions of the Proposed Order not otherwise modified or addressed by the parties during the settlement negotiations.

18. Upon agreement of the parties, the settled, Stipulated [sic] Order was placed on the record. Both counsel acknowledged agreement on the record. When placing the final agreement on the record, counsel for Mother stated "Okay. We're - I'm basically following that proposed order and making changes where they are." Transcript of the Proceedings, October 25, 2017, "Tr." at page 2, lines 15-17.

19. Father's first proposed order was submitted on February 26, 2018, attached to his Motion for Consideration [sic] filed on February 26, 2018. Father's proposed order is incorrect in that it failed to track the template for settlement that was used during negotiations of the final settlement and does not contain the provisions agreed to on the record on October 25, 2017.

(underscoring and parenthesis in original). The "Transcript of the Proceedings" cited by the Family Court was Exhibit "A" to Father's response to Mother's attorney's letter to the court dated January 23, 2018, filed on January 24, 2018. "Mother's Exhibit AAA" referred to by the Family Court was a document titled "Proposed Order." It was originally attached as Exhibit 1 to Mother's Trial Memorandum, filed on October 24, 2017, served by hand-delivery to Father's counsel on October 20, 2017. By email dated October 23, 2017, Mother's counsel sent Mother's Exhibit AAA to Father's counsel, asking him to "replace this with the one provided to you earlier." Exhibit 1 to Mother's Trial Memorandum and Mother's Exhibit AAA are identical except for the

exhibit identification, and will be referred to as the **"Proposed Order."**

Father disputes that the Proposed Order was to provide any settlement terms not specifically stated when counsel placed the settlement terms on the record. The transcript of proceedings shows the following colloquy:

> THE COURT: Okay. And the record should reflect the presence of counsel and the parties. And, ah, we've had a discussion?
>
> [MOTHER'S COUNSEL]: Yes.
>
> [FATHER'S COUNSEL]: Multiple.
>
> [MOTHER'S COUNSEL]: Multiple.
>
> THE COURT: And?
>
> [MOTHER'S COUNSEL]: We have an agreement.
>
> THE COURT: Good.
>
> [MOTHER'S COUNSEL]: Should I put it in the record?
>
> [FATHER'S COUNSEL]: Go ahead.
>
> THE COURT: Yes, please.
>
> [MOTHER'S COUNSEL]: Okay. We're -- <u>I'm basically following that proposed order and making changes where they are</u>.

(underscoring added). Contrary to FOF 18, Father's counsel never explicitly "acknowledged agreement on the record." The Family Court did not ask Father's counsel whether Mother's counsel's statement – that she was "basically following that proposed order and making changes where they are" – was accurate. However, both attorneys then proceeded to refer to various settlement terms that were "written in the proposed order" as being "the same as it is now, pretty much[.]" After the modified terms were recited, the following exchange took place:

> THE COURT: Okay. Anything else?
>
> [FATHER'S COUNSEL]: No.
>
> THE COURT: I think we're done here. Put it in writing and we will -- I'll sign it.

There is substantial evidence in the record to support the Family Court's finding that the parties agreed the Proposed Order would

serve as the template for the settlement, and that portions of the Proposed Order not modified would remain in the final order.

## IV.

The remaining material issue presented by Father's appeal is whether the Stipulated Order accurately reflects the terms contained in the Proposed Order and any modifications placed on the record during the proceedings on the record. HFCR Rule 58 (2015) provides, in relevant part:

> (g) Preparation of stipulated order when provisions on record. If a party or parties are present in court, with or without an attorney, and state for the record that the parties stipulate to the entry of orders, the stipulation shall be reduced to writing by the attorney or party designated by the court, within 10 days, and shall be approved by all parties and their attorneys, if any, unless such a requirement is waived by the court. If a party who was present in court fails or refuses to approve the stipulation and order within 5 days after receipt, the court may approve the stipulation and order without approval of either the party or the party's attorney, if any, provided that the provisions are consistent with the provisions stipulated to in court, and provided that the attorney or party preparing the stipulation and order informs the court in writing that either the party or the party's attorney, if any, refused or failed to approve the stipulation and order within the 5-day period.

(emphasis added). HFCR Rule 58.1 (2015) provides, in relevant part:

> (a) Forms of stipulations and orders. A stipulation not made in open court shall be in writing, signed by the parties and/or their attorneys, and submitted to the court for approval.

(emphasis added). The Stipulated Order was not signed by Father or Father's then-counsel. Accordingly, the material terms of the Stipulated Order must have been either "made in open court" or contained in the Proposed Order to be binding on Father.[5]

---

[5] The applicability of HFCR Rule 58.1 to the Stipulated Order distinguishes this case from Mijo, in which a settlement was enforced despite there being a dispute over whether the plaintiff would "cancel" or "forgive" the defendants' loan. The disputed language in Mijo was found to be a tax consideration which was held to be "not part of settlement." 87 Hawai'i at 31-32, 950 P.2d at 1231-32. In this case, Father cannot be bound to a stipulation that was not either in writing and signed by him or his counsel, or made in open court – e.g., stated in the transcript of proceedings.

**<u>FOF No. 24.a.</u>**

Father challenges FOF no. 24.a.:

> [24.] a. <u>Provision 2; Page 2, Third paragraph,</u>
> <u>Right to make final decisions:</u> The language in the final
> <u>Stipulated Order</u> is consistent with the Tr. at page 2, lines
> 1-25. Mother is allowed to make final decisions after
> conferring between the parties.

(underscoring in original). The transcript of proceedings shows
that Mother's counsel stated:

> So, um, ah, as to the legal custody on page two the
> understanding is that they will have joint legal custody,
> um, if they're -- if they confer -- they have to confer, and
> if there's, um, no agreement with, um, in them conferring --
> conferring, they have to go to a mediator or a third party
> to assist them make [sic] a decision, and if they're unable
> to, then they can go back to court -- ah, <u>then mother makes</u>
> <u>the final decision</u>.

(emphasis added). Father's counsel did not indicate
disagreement. There was no further discussion of this issue. We
disagree with Father's contention that the Stipulated Order can
be read to mean that Mother's right to decide substantive matters
when the parties cannot agree would preclude Father from further
pursuing those matters in court; the Stipulated Order at page 2
states "Before returning to Court . . ." thus contemplating the
parties' right to return to court on issues that cannot be
resolved. FOF no. 24.a. is not clearly erroneous.

**<u>FOF No. 24.b.</u>**

Father challenges FOF no. 24.b.:

> [24.] b. <u>Exchanges at Haliimaile park</u>: The
> <u>Stipulated Order</u> states that when the child is not at
> school, "All exchanges of the child shall be at Haliimaile
> park unless otherwise agreed between the parties." <u>Order;</u>
> Page 3, paragraph 1, last line. That is confirmed in the
> Tr., page. [sic] 5, lines 9-12. <u>The language regarding</u>
> <u>exchanges of the child is the same in the final Order as it</u>
> <u>was in the Proposed Order and was not disputed or changed in</u>
> <u>settlement negotiations</u>.

(underscoring added). The underscored portion of the finding is
erroneous because the drop-off and pick-up locations in the

Proposed Order are not only at school or at Haliimaile Park; they include Father's residence, Kahului McDonald's on Dairy Road, Hanzawa's Variety Store, or "at other locations if agreed upon by the parties." The transcript of proceedings states:

> [MOTHER'S COUNSEL]: All, um, drop-offs and pick-ups will be at school. If they're not at school, they're on the weekend, then it will be at Haliimaile Park; right?
>
> [FATHER'S COUNSEL]: Yeah.
>
> . . . .
>
> [MOTHER'S COUNSEL]: . . . Pick-up and drop-off at Haliimaile.

However, the Stipulated Order provides for various pick-up and drop-off locations including "school," "Haliimaile park," "St. Joseph Church parking lot, Makawao, Hawaii," or "at other locations if agreed upon by the parties." FOF no. 24.b. is clearly erroneous.

### FOF No. 24.c.

Father challenges FOF no. 24.c.:

> [24.] c. <u>Cancellation of visits if child is sick</u>: The language was originally in the <u>Proposed Order</u> on page 4, first full paragraph, specifically states that, "If the child is seriously ill and child is under physician's care, physician's recommendations shall be followed, and [Mother] may cancel visits". That language was not challenged in the settlement negotiations and, therefore, was accepted and remains as written in the final Order.

The quoted language is contained in the Proposed Order. There is nothing in the transcript of proceedings indicating that the language was modified during settlement negotiations. FOF no. 24.c. is not clearly erroneous.

### FOF No. 24.d.

Father challenges FOF no. 24.d.:

> [24.] d. <u>Telephone access</u>: Telephone access was discussed at the hearing and, accordingly, in the Tr., page 17, lines 7-9, makes it clear that there is one telephone call per day. This agreement was added to the final <u>Stipulated Order</u> and is reflected on page 5, #7 "Telephone Access".

The Proposed Order stated:

> 7.    Telephone Access:   The parents shall allow the child reasonable telephone access to the other parent while in his or her care.

The transcript of proceedings states:

> [MOTHER'S COUNSEL]:   Telephone access.   Mother will initiate nightly -- nightly good night calls to father, ah, I mean, um, to father and then let the father and son talk and say good night.   And will investigate, um, the ability to get FaceTime and/or Skype in Haiku.
>
> [FATHER'S COUNSEL]:   Wait, I thought that if available.
>
> [MOTHER'S COUNSEL]:   If they --
>
> THE COURT:   Yeah, if available.
>
> [FATHER'S COUNSEL]:   It will be FaceTime.
>
> [MOTHER'S COUNSEL]:   If available.   Okay.
>
> .   .   .   .
>
> [FATHER'S COUNSEL]:   Um, my client would like to be able to initiate phone calls, good night calls, or good night Skype visits with [Child], ah --
>
> THE COURT:   Well, I -- I don't think there's a -- there's no bar from communication.   Ah, the way it's set up, mom will initiate them.   If dad has to go to something or has a [sic] appointment or something and wants to talk sooner, I don't think there's anything wrong with that either.   You're not barred from calling just to talk to him.
>
> [FATHER]:   Oh, okay.   I can make -- I can initiate the phone call then.
>
> THE COURT:   Yeah.   But mom -- but if you don't for some reason, mom has an affirmative duty to at least make an attempt to get in touch with you.

The issue of weekend good morning calls between Father and Child when Child was with Mother was raised but was never resolved during the record proceedings.   The Stipulated Order provides:

> 7.    **Telephone Access**:   There shall be no more than one call per day to either parent when the child is with the other parent.   The parent the child is with shall initiate a nightly goodnight call to the other parent before bedtime so that the child may say goodnight to the other parent. Father may investigate skype or facetime options, for availability in Haiku.
>
> In the event the child asks to speak to the other parent, the custodial parent shall call the other parent for

> the child.  When the child is old enough, he may initiate
> calls to his parents himself.

FOF no. 24.d. is clearly erroneous.  The Stipulated Order does not fully or accurately reflect the transcript of proceedings.

### FOF No. 24.e.

Father challenges FOF no. 24.e.:

> [24.] e.    Holiday Schedule: The Holiday Schedule
> provision 8, pages. [sic] 5-6 of the final Stipulated Order
> is the same as the Holiday Schedule in the Proposed Order
> provision 9, pages. [sic] 5-6.  The Holiday Schedule has not
> been modified and was the same one on the proposed order
> used as a template for negotiation on October 25, 2017,
> there are no changes.  The Tr., page 6, lines 11-12 reads,
> "The holiday schedule is as written in the proposed order".

The FOF accurately recites the content of the transcript. However, the holiday schedule in the Proposed Order differs from the holiday schedule in the Stipulated Order because the pick-up and drop-off locations are not the same.  Since the holiday schedule is not as written in the Proposed Order, FOF no. 24.e. is clearly erroneous.

### FOF No. 24.f.

Father challenges FOF no. 24.f.:

> [24.] f.    Co-Parenting classes: Co-Parenting classes
> was [sic] not modified.  It was in the Proposed Order
> template as #21 on page 9, and still in the final Stipulated
> Order as #19 on page 9.  The additional requirement in the
> Proposed Order template that, "each parent shall continue
> parent education classes with appropriate agency......" was
> deleted from the final Stipulated Order, by agreement.

The FOF accurately recites that paragraph 21 of the Proposed Order is identical to paragraph 19 of the Stipulated Order. However, the transcript of proceedings shows that the provision should not have been in the Stipulated Order:

> [MOTHER'S COUNSEL]:  Um, that we took care of the
> coparenting thing already.  Um, we're withdrawing the
> parenting education thing.

FOF no. 24.f. is clearly erroneous.

**FOF No. 24.g.**

Father challenges FOF no. 24.g.:

> [24.] g.    <u>Reimbursement by Father to Mother for his share of cost for Custody Evaluation:</u> The total owed by Father to Mother, according to the Transcript of October 25, 2017, was, "one half of Dr. Simon's bill of $3,250.00 to mom within the year".  The final Stipulated Order states that the sum "of $3,250.00, paying a minimum of $270.00 per month, within 12 months of the signing of this Order for his share of the cost of the Custody Evaluation."  This was an agreement to pay the debt monthly over time.  The agreed upon terms is not in the Transcript.

The FOF accurately quotes the transcript of proceedings and a portion of paragraph 23 of the Stipulated Order.  FOF no. 24.g. is correct that Father owed a total of <u>half</u> of the $3,250 bill. But the Stipulated Order also requires that "Payments shall be made by the 1st of each month to the Respondent."  FOF 24.g. is clearly erroneous because there is no agreement in the record about a minimum monthly payment due on the first day of each month.

**FOF No. 24.h.**

Father challenges FOF no. 24.h.:

> [24.] h.    <u>Reimbursement of Preschool Expenses</u>: The Stipulated Order states, Provision #24, page 11, that Father shall reimburse Mother $1,950.00 by July 1, 2018, by paying her a minimum of $200 per month.  The Tr. states that Father shall pay Mother $200.00 per month commencing November, 2017 through July, 2018, Tr., page 12, lines 5-8.  In an oversight the language negotiated by the parties fails to state the specific amount of money Father owes, but it was previously stated in the Stipulated Order as $1,950.00, and the Court finds this amount to be reasonable.

The Stipulated Order states:

> 24.    **Preschool Reimbursement**: [Father] shall reimburse [Mother] the sum of $1,950.00, paying a minimum of $200.00 per month, by July 1, 2018.  The reimbursement is for preschool expenses paid for [sic] [Mother].  Payments shall be made by the 1st of each month to the [Mother].

There was no equivalent provision in the Proposed Order.  There is only one mention of preschool expenses in the transcript of proceedings:

12

> [MOTHER'S COUNSEL]: Okay. Um, um, Mrs. [sic] [W]'s going to pay the second half of preschool this year, um, at the rate of $200.00 a month starting November 2017 to July, ah, 2018.

The transcript is ambiguous about who is paying the second half of preschool, and the total monthly payments do not add up to $1,950.00. FOF no. 24.h. is clearly erroneous.

### FOF No. 20

Father also challenges FOF no. 20:

> 20. The final <u>Stipulated Order</u> reflecting the agreement of the parties was filed on February 15, 2018. Said Order reflected a true and accurate representation of the parties' agreement regarding all issues, entered on the record on October 25, 2017. See Exhibit "3", attached.[6]

(underscoring in original) (footnote added). Because the Stipulated Order contained material terms which were neither in the Proposed Order nor "made in open court," FOF no. 20 is clearly erroneous.

### COL No. 5

Because of the clearly erroneous FOFs, COL no. 5, which states:

> 5. Mother's <u>Stipulated Order</u>, submitted to the Court on January 23, 2018, accurately reflects the agreement placed on the record as agreed to by the parties on October 25, 2017.

(underscoring in original) is wrong as a conclusion of law, and would be clearly erroneous if regarded as a finding of fact. We need not address the remaining points of error presented by Father.

**V.**

For the foregoing reasons, the Stipulated Order and the Order Denying Reconsideration are vacated, and this case is

---

6    There were no exhibits attached to the Stipulated Order.

13

remanded to the Family Court for further proceedings consistent with this opinion.

DATED:   Honolulu, Hawai'i, April 2, 2019.

On the briefs:

WW,
Petitioner-Appellant, Pro Se.

Lynn K. Kashiwabara,
Deputy Attorney General,
State of Hawai'i,
for Respondent-Appellee.

Chief Judge

Associate Judge

Associate Judge